1   Douglas Silverstein (Bar No. 181957)
    Michael Jacob (Bar No. 229939)
2   dsilverstein@californialaborlawattorney.com
    mjacob@californialaborlawattorney.com
3   KESLUK & SILVERSTEIN, P.C.
    9255 Sunset Blvd., Suite 411
4   Los Angeles CA 90069
    Tel: (310) 273-3180
5   Fax: (310) 273-6137

6   Alan Burton Newman, Esq. (SBN 40403)
    abnplc@yahoo.com
7   ALAN BURTON NEWMAN, PLC
    4344 Promenade Way, Suite 104
8   Marina Del Rey, California 90292
    Telephone: (310) 306-4339
9   Facsimile:  (310) 821-1883

10  Attorneys for Plaintiff Elliott Lewis

11

12                  UNITED STATES DISTRICT COURT

13                 CENTRAL DISTRICT OF CALIFORNIA

14

15  ELLIOTT LEWIS, an individual, on        Case No. 09-CV-7193 MMM (JCx)
    behalf of himself, and all others
16  similarly situated,                     Assigned for all purposes to Honorable
                                            Margaret M. Morrow
17              Plaintiff,
                                            NOTICE OF MOTION AND
18         v.                               MOTION FOR PRELIMINARY
                                            APPROVAL OF CLASS ACTION
19  WENDY'S INTERNATIONAL, INC.,            SETTLEMENT
    a Corporation; and DOES 1-20,
20  inclusive,                              [DEFENDANT'S JOINDER IN THIS
                                            MOTION IS FILED
21              Defendant.                  CONCURRENTLY HEREWITH]

22                                          Date:    January 24, 2011
23                                          Time:    10:00 a.m.
                                            Place:   Roybal - Courtroom 780
24

25

26

27

28

PLEASE TAKE NOTICE that on January 24, 2011, at 10:00 a.m., before the Honorable Margaret M. Morrow in Courtroom 780 of the United States District Court for the Central District of California, Plaintiff Elliott Lewis will and does move for preliminary approval of the proposed class settlement in this case, and for entry of an order:

1. Preliminarily approving the Settlement Agreement, attached as Exhibit 1 to the Declaration of Douglas N. Silverstein;

2. Preliminarily certifying, for settlement purposes only, a class of individuals that shall include "All non-exempt hourly employees (specifically, Crew Members, Shift Supervisors, Shift Supervisors-Part Time, Shift Supervisors-in-Training, Assistant Managers, Assistant Managers-in-Training, Co-Managers, and General Managers-in-Training) who, at any time between August 31, 2005 and the Preliminary Approval Date, were employed by Wendy's in a corporate-owned store located in California" ("Settlement Class")

3. Appointing the Law Offices of Kesluk & Silverstein and Alan Burton Newman, P.L.C as class counsel;

4. Appointing Plaintiff Elliott Lewis as representative of the Settlement Class;

5. Approving the proposed Notice of Class Action Settlement ("Notice") and the accompanying "Exclusion or Opt-Out Request Form" ("Exclusion Request Form") (attached as Exhibits 1 and 2 to the [Proposed] Order Granting Preliminary Approval of Class Action Settlement and for Class Notice of Settlement and Fairness Hearing lodged concurrently herewith);

6. Authorizing mailing of the Notice and Exclusion Request Form to the Settlement Class; and

7. Scheduling a final settlement approval hearing to take place 90 calendar days following preliminary approval, or as soon thereafter as the matter may be heard.

1    Defendant Wendy's International, Inc. joins in this request for preliminary
2    approval by separate concurrence filed herewith.
3    The motion will be based on this Notice of Motion, the attached
4    Memorandum of Points and Authorities, the Declaration of Douglas N. Silverstein
5    and attached exhibits, the Declaration of Elliott Lewis, the argument of counsel and
6    upon such other material contained in the file and pleadings of this action.

7

8
     DATED: October 15, 2010                    KESLUK & SILVERSTEIN
9

10                                        By_____/s/_____
11                                            Douglas N. Silverstein, Esq.
                                             Michael G. Jacob, Esq.
12                                           Attorneys for Plaintiff
                                             ELLIOTT LEWIS, an individual, on
13                                           behalf of himself, and all others
14                                           similarly situated

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOT. FOR PRELIMINARY APPROVAL
09-CV-7193 MMM (JCx)

# TABLE OF CONTENTS

PAGE

I.  INTRODUCTION ……………………………………………… 3

II.  FACTUAL AND PROCEDURAL BACKGROUND…………….. 4

III.  THE PLAINTIFF CLASS……………………………………… 6

IV.  SUMMARY OF THE SETTLEMENT TERMS………………… 6

V.  THE SETTLEMENT MEETS ALL CRITERIA NECESSARY

FOR PRELIMINARY APPROVAL………………………………… 7

    A.  The Role of the Court……………………………………… 8

    B.  Factors To Be Considered in Granting

    Preliminary Approval……………………………………… 8

        1.  The Settlement is the Product of Serious Informed

        and Noncollusive Negotiations……………………… 10

        2.  The Settlement Has no "Obvious Deficiencies" and

        Falls Within the Range of Approval………………… 13

        3.  The Settlement Does Not Improperly Grant

        Preferential Treatment To the Class Representative

        or Segments of the Class…………………………… 18

VI.  THE CLASS IS PROPERLY CERTIFIED FOR

SETTLEMENT PURPOSES……………………………………… 19

    A.  The Court Should Certify the Proposed Class

    Under Rule 23(a) and (b) ……………………………… 19

        1.  Members of the Class are so numerous that Joinder

        of all Members is Impracticable……………………… 19

        2.  Common Issues of Law and Fact Unite the Class……… 20

        3.  The Claims of the Plaintiff Are Typical of

        the Class Claims……………………………………… 22

        4.  The Named Plaintiff Has Fairly and Adequately

Kesluk & Silverstein, P.C.
9255 Sunset Blvd., Ste. 411
Los Angeles, CA 90069
Tel: (310) 273-3180
Fax: (310) 273-6137

        Protected the Interest of the Class……………………    23

        5.    Rule 23(b)(3) prerequisites are satisfied………………    24

VII.    CONCLUSION………………………………………………    25

Keskuk & Silverstein, P.C.
9255 Sunset Blvd., Ste. 411
Los Angeles, CA 90069
Tel: (310) 273-3180
Fax: (310) 273-6137

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

1

TABLE OF AUTHORITIES

2

<u>CASES</u>                                                                                    <u>PAGE</u>

3

*Bibo v. Fed. Express, Inc.*

4
     2009 WL 1068880 at *7-8 (N.D. Cal. 2009) ……………..………    21

5

*Blackie v. Barrack*

6
     524 F.2d 891, 904 (9th Cir. 1975) ………………..…………….    21, 23

7

*Blackwell v. Sky West Airlines, Inc.*

8
     245 F.R.D. 453, 468 (S.D. Cal. 2007) ……………….……….    12

9

*Boyd v. Bechtel Corp.*

10
     485 F. Supp. 610, 622 (N.D. Cal. 1979) ………………..……….    7

11

*Brown v. Federal Express Corp.*

12
     No. CV 07-5011,

13
     2008 WL 906517, *7 (C.D. Cal. 2008) …………………………    12

14
*California Rural Legal Assistance v. Legal Serv. Corp.*

15
     917 F.2d 1171, 1175 (9th Cir. 1990) ………………..………...    21

16
*Campbell v. Price Waterhouse Coopers, LLP*

17
     253 F.R.D. 586, 593 (E.D. Cal. 2008) …………………………    19

18
*Dukes v. Wal-Mart, Inc.*

19
     509 F.3d 1168, 1184 (9th Cir. 2007) ……..………………..    21

20
*Gen. Tel. Co. of Sw.  v. Falcon*

21
     457 US 147, 155, 102 S.Ct. 2364, 2369 (1982) …………..………    20, 21

22
*Gaspar v. Linvatec Corp.*

23
     167 F.R.D. 51, 56 (N.D. Ill. 1996) ………………..…………….    19

24
*Gautreaux v. Pierce*

25
     690 F.2d 616, 621 n.3 (7th Cir. 1982) ……………….…………….    6

26
*Glass v. UBS Financial Services*

27
     2007 WL 221862, at *5 (N.D.Cal.2007) …………….………….    16

28

*Kesluk & Silverstein, P.C.*
9255 Sunset Blvd., Ste. 411
Los Angeles, CA  90069
Tel: (310) 273-3180
Fax: (310) 273-6137

iii

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

*Grant v. Sullivan*
     131 F.R.D. 436, 446 (M.D. Pa. 1990) ………………..…………    19

*Hanlon v. Chrysler Corp.*
     150 F.3d 1011, 1019 (9th Cir. 1998) ………………..…………   19-23

*Harris v. Palm Spring Estates, Inc.*
     329 F.2d 909, 913-14 (9th Cir. 1964) ……………………………    18

*In re Jiffy Lube Sec. Litig.*
     927 F.2d 155, 158 (4th Cir. 1991) ………………………..………    6

*In re Mego Fin. Corp. Sec. Litig.*
     213 F.3d 454, 458 (9th Cir. 2000) …………………..………   16-17, 22

*In re Mercury Interactive Corp. Sec. Litig.*
     2010 WL 3239460 (C.A.9 (Cal.))………………………………..    18

*In re Tableware Antitrust Litig.,*
     484 F. Supp.2d 1078, 1080 (N.D. Cal 2007) ……………………    11

*In re Wash. Public Power Supply Sys. Sec. Litig.*
     720 F. Supp. 1379, 1392 (D. Ariz. 1989) ………………..………    10

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*
     571 F.3d 953, 958 (9th Cir. 2009)…………………..…………    23

*In re Wirebound Boxes Antitrust Litig.*
     128 F.R.D. 268 (D. Minn. 1989) …………………..………………..    22

*Kenny v. Supercuts, Inc.*
     252 F.R.D. 641, 646 (N.D. Cal. 2008) …………………..………    14

*Kimoto v. McDonald's Corp.*
     No. CV 06-3032
     2008 WL 4690536, *6 (C.D. Cal. Aug. 19, 2008) ………..……   8, 13-14

*Lanzarone v. Guardmark Holdings, Inc.*
     2006 WL 4393465, *1, *6 (C.D. Cal. Sept. 7, 2006) ……..………    12

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

*Lerwill v. Injlight Motion Pictures, Inc.*
        582 F.2d 507, 512 (9th Cir. 1978) ………………………………… 22


*Linney v. Cellular Alaska P'ship*
        1997 WL 450064 *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234
        (9th Cir. 1998) …………………………………………………… 6

*Murray v. Local 2620, Dist. Council 57, AFSCME, AFL-CIO*
        192 F.R.D. 629, 631 (N.D. Cal. 2000) …………………………… 19

*Officers for Justice v. Civil Justice Comm'n ("Officers for Justice")*
        688 F.2d 615, 625 (9th Cir. 1982)………………………………… 5, 7

*Oxendine v. Williams*
        509 F.2d 1405, 1407 (4th Cir. 1975) ……………………………… 22

*Parra v. Bashas, Inc.*
        536 F.3d 975, 979 (9th Cir. 2008) ………………………………… 20

*Perez v. Safety-Kleen Sys., Inc.*
        253 F.R.D. 508, 515 (N.D. Cal. 2008) …………………………… 12

*Philadelphia Hous. Auth. v. American Radiator & Standard Sanitary Corp.*
        323 F.Supp.364, 372 (D.C. Pa. 1970)……..……………………… 6

*Rodriguez v. West Publ'g Corp.*
        563 F.3d 948, 956-66 (9th Cir. 2009) ………..………………… 7

*Rosenburg v. I.B.M.,*
        2007 WL 128232, at *4 (N.D. Cal.) ………..…………………….. 24

*Staton v. Boeing*
        327 F.3d 938, 959 (9th Cir. 2003)..……………………..………… 6-20

*Valentino v. Cater-Wallace, Inc.*
        97 F.3d 1227, 1234 (9th Cir. 1996) ………………………..……… 23

*Vasquez v. Coast Valley Roofing, Inc.*
        670 F. Supp.2d 1114, 1120 (E.D.Cal. 2009) ……..……………… 7, 11, 18, 24

*Kesluk & Silverstein, P.C.*
9255 Sunset Blvd., Ste. 411
Los Angeles, CA 90069
Tel: (310) 273-3180
Fax: (310) 273-6137

v
TABLE OF CONTENTS AND TABLE OF AUTHORITIES

*Wang v. Chinese Daily News*
    231 F.R.D. 602, 607-608 (C.D.Cal. 2005)………..……………….    21

*Wells v. Allstate Ins. Co.*
    557 F. Supp. 2d 1, 8-10 (D.D.C. 2008) …………….……………    17

*Whiteway v. FedEx Kinko's Office and Print Serv., Inc.*,
    2006 WL 2642528, at *4, 10 (N.D. Cal. Sept. 14, 2006) …………    23

*Williams v. Mohawk Indus., Inc.*
    568 F.3d 1350, 1356 (11th Cir. 2009) ..………………….…..……    20-21

FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 23(e) ..…………………..…………………..…….    6

Fed. R. Civ. P. 23 (a) and (b)(3) …………….…………………..…    18

Fed. R. Civ. P. 23(a)(2) ..…………………..…………………..……    19

CALIFORNIA STATUTES

Labor Code § 512(a) ..…………………..…………………..………    9

TREATISES

*Manual for Complex Litig., Second* § 30.44 (1993) ………..……….    6

*Manual for Complex Litig., Third*, § 20.212…………..…………….    6

*Manual, Second* § 30.44 at 229…………..…………………..……    6-7

*Kesluk & Silverstein, P.C.*
9255 Sunset Blvd., Ste. 411
Los Angeles, CA 90069
Tel: (310) 273-3180
Fax: (310) 273-6137

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2         Plaintiff Elliott Lewis ("Plaintiff") respectfully submits this memorandum of

3    points and authorities in support of this Motion for Preliminary Approval of Class

4    Action Settlement ("Motion").  Defendant Wendy's International, Inc. (hereinafter

5    "Defendant" or "Wendy's") joins in this request for preliminary approval by

6    separate concurrence filed herewith.

7    **I.    INTRODUCTION**

8         Plaintiff Elliott Lewis and Defendant Wendy's (jointly the "Parties") have

9    reached a full and final settlement of the above-captioned wage and hour matter,

10   which is embodied in the Parties' Settlement and Release Agreement ("Settlement

11   Agreement").[1]  In accordance with the Settlement Agreement, Wendy's agrees to

12   pay $1.5 million dollars as a common fund, non-reversionary settlement to

13   Settlement Class Members, inclusive of attorneys' fees, costs and expenses, the

14   service payment to the class representative, and claims administration costs.

15        The Parties jointly request that the Court preliminarily approve this

16   settlement as it was reached through arm's-length negotiations with a private

17   mediator experienced in class action litigation, and represents an excellent result for

18   settlement class members throughout California.  Class members will receive a

19   settlement payment without:  (1) hiring counsel, (2) filing an administrative claim,

20   (3) filing a lawsuit, (3) producing documents, or (4) being deposed.  In other words,

21   class members will receive significant monetary awards without ever having to

22   litigate their claims.  Further, unlike in claims-made settlements (probably the

23   majority of these types of cases), these class members do not even have to submit a

24   claim form in order to receive a settlement payment.[2]  In the absence of this

25   settlement, the claims of many of the class members would be time-barred.

26   _____

27   [1] A true and correct copy of the Settlement Agreement is attached as Exhibit 1 to
     the concurrently filed Declaration of Douglas N. Silverstein ("Silverstein Decl.")
     [2] The only circumstance under which class members will need to do anything other
28   than cash their checks is if they have moved and need to provide a change of
     address to the Claims Administrator.

1  By this Motion, the Parties respectfully request that the Court preliminarily

2  approve the Settlement Agreement, conditionally certify the proposed settlement

3  class, and enter the [Proposed] Order Granting Preliminary Approval of Class

4  Action Settlement and for Class Notice of Settlement and Fairness Hearing

5  ("Proposed Order") lodged concurrently herewith.

6  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

7  Plaintiff Elliott Lewis ("Lewis") worked as a non-exempt hourly employee at

8  several Wendy's California corporate-owned stores for more than seven years,

9  between December 2001 and March 2009.  He was originally hired by Wendy's in

10  December 2001, as a crew member at its Ontario, California restaurant.  He

11  voluntarily resigned from Wendy's on January 18, 2004, but was rehired three

12  months later, on April 28, 2004, to work at the same store.  In August 2005, Lewis

13  was promoted to the position of Shift Supervisor at the Rancho Cucamonga

14  restaurant.  In October 2006, he transferred to the Beaumont restaurant in the same

15  position where he worked until his resignation in March 2009.

16  This class action complaint, styled *Elliott Lewis v. Wendy's International,*

17  *Inc.*, was filed on or about August 31, 2009 in the Superior Court of California,

18  County of Los Angeles (Case No. BC 420922).  On or about October 2, 2009,

19  Defendant removed the matter to federal court, where it was assigned case number

20  CV 09-07193 MMM (JCx) (herein "the Action").  On or about January 10, 2010,

21  Plaintiff filed a First Amended Complaint in the Action.  On or about April 14,

22  2010, Plaintiff filed a Second Amended Complaint ("Complaint") alleging, on

23  behalf of himself and on behalf of all other Wendy's hourly employees in

24  California, that Wendy's:  (1) failed to provide hourly employees with meal breaks,

25  (2) failed to provide hourly employees with rest breaks, (3) failed to pay premium

26  wages owing for unprovided meal and/or rest breaks, (4) failed to provide accurate

27  wage statements, (5) failed to pay earned and unpaid wages immediately upon

28  termination of employment, and (6) violated California Business & Professions

MOT. FOR PRELIMINARY APPROVAL
09-CV-7193 MMM (JCx)

1   Code Section 17200, *et seq*. by, among other ways, failing to pay premium wages
2   for missed meal and rest breaks.  Plaintiff also sought penalties against Wendy's
3   pursuant to the Labor Code Private Attorneys General Act ("PAGA") as well as
4   damages, other penalties, interest, disgorgement of profits and attorneys' fees and
5   costs.  The Complaint seeks to certify a class consisting of "All persons who are
6   employed or have been employed as hourly employees by defendants in the State of
7   California at any time since four (4) years prior to the filing of this lawsuit."
8   (Second Amended Complaint, ¶35).

9          Prior to filing this case, Class Counsel conducted a thorough investigation
10  into the facts of this Action, including a review of documents, Wendy's meal period
11  waiver(s), and time sheets.  Plaintiff's counsel has vigorously prosecuted this action
12  by conducting extensive discovery, reaching out to class members, and obtaining
13  and reviewing thousands of pages of relevant documents, including time records
14  depicting the clock in and clock outs for a substantial portion of the proposed
15  settlement class during the relevant time period.

16         Defendant disputes Plaintiff's claims and asserts that, during all relevant
17  times, Wendy's had a policy of providing meal and rest breaks, and that it provides
18  and has provided itemized wage statements that comply with California law as to
19  all proposed settlement class members.  Consequently, Defendant does not believe
20  that any liability to Plaintiff or the class members exists, or that Plaintiff or class
21  members are entitled to any recovery.  Defendant also contends that Plaintiff is an
22  inadequate class representative and that Plaintiff's claims are not suitable for class
23  treatment.

24         Nevertheless, Defendant has concluded that it is desirable that the Action be
25  settled in the manner and upon the terms set forth in the Settlement Agreement to
26  avoid the further expense, inconvenience and distraction of continued litigation, and
27  the risk of the outcome in the Action.  Therefore, Defendant has determined that it
28  is desirable and beneficial to put to rest the claims asserted in the Action.

MOT. FOR PRELIMINARY APPROVAL
09-CV-7193 MMM (JCx)

1    Ongoing discussions between counsel for the Parties, formal and informal
2    discovery, as well as the Parties' respective investigations into, and evaluations of
3    Plaintiff's claims, have permitted each side to assess the relative merits of the
4    claims and the defenses to those claims.  The Parties agree that the investigation
5    and evaluation, as well as the information exchanged during settlement negotiations
6    and mediation, are more than sufficient to assess the merits of the respective
7    Parties' positions and to compromise the issues on a fair and equitable basis.
8    (Silverstein Decl. ¶¶ 6-11).
9    On August 31, 2010, the Parties mediated their disputes before David A.
10   Rotman, Esq.  Mr. Rotman is a highly-regarded mediator with extensive experience
11   mediating wage and hour class actions.  At the end of a full day of mediation, Mr.
12   Rotman issued a mediator's proposal that both Parties accepted, reaching agreement
13   to resolve on a class-wide basis the disputes raised in the Action.

14   **III.   THE PLAINTIFF CLASS**

15   The proposed settlement class includes all non-exempt hourly employees
16   (specifically, Crew Members, Shift Supervisors, Shift Supervisors-Part Time, Shift
17   Supervisors-in-Training, Assistant Managers, Assistant Managers-in-Training, Co-
18   Managers, and General Managers-in-Training) who, at any time between August
19   31, 2005 and the Preliminary Approval Date, were employed by Wendy's in a
20   corporate-owned store located in California (hereinafter "Class", "Settlement
21   Class" or  "Settlement Class Members").

22   **IV.   SUMMARY OF THE SETTLEMENT TERMS**

23   The proposed settlement requires Wendy's to pay a common fund, non-
24   reversionary settlement of One Million Five Hundred Thousand Dollars
25   ($1,500,000.00) to Settlement Class Members, including an Incentive Award to the
26   Class Representative to not exceed Seven Thousand Five Hundred Dollars
27   ($7,500.00), claims administration expenses of up to Fifty Thousand Dollars

28

MOT. FOR PRELIMINARY APPROVAL
09-CV-7193 MMM (JCx)

1   ($50,000.00), a payment to the California Labor and Workforce Development

2   Agency under the PAGA, and payments for attorneys' fees and costs.

3        The Settlement Agreement provides that the Court may approve, and

4   Defendant will not oppose, an award of attorneys' fees in an amount not to exceed

5   33 & 1/3% of the total settlement amount, or Five Hundred Thousand Dollars

6   ($500,000.00), and litigation costs of up to Twenty Five Thousand Dollars

7   ($25,000). The amount remaining after these payments is the amount available to

8   distribute to the class ("Net Settlement Amount"), which will be no less than Eight

9   Hundred Ninety Seven Thousand and Five Hundred Dollars ($897,500). The

10  Settlement Class will be notified through mail at their last known addresses. Any

11  returned envelopes from this mailing with forwarding addresses will be utilized by

12  the Claims Administrator to locate the Settlement Class Members through

13  reasonable and customary efforts used in the administration of such settlements,

14  including checking the National Change of Address data base and performing a

15  skip trace. In the event that there are any unclaimed funds, the Settlement

16  Agreement provides that the funds will be donated to charity.

17       This is an excellent common fund settlement for members of the Settlement

18  Class, who will automatically receive a settlement payment by mail unless they

19  affirmatively opt-out of the settlement. As explained in more detail below, liability

20  in this case was uncertain because of Defendant's arguments that its written policies

21  complied with the law, and that some or all of the Class Members may have been

22  provided breaks. Additionally, Defendant presented various defenses and

23  considerable evidence that represented serious hurdles toward Plaintiff obtaining

24  class certification and proving liability.

25  **V.   THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR
26  PRELIMINARY APPROVAL**

27       Settlement is the preferred means of resolving litigation. *Officers for Justice*

28  *v. Civil Justice Comm'n ("Officers for Justice")*, 688 F.2d 615, 625 (9th Cir. 1982).

1  Settlement is particularly appropriate because the costs, delays, risk, and

2  uncertainties inherent in complex litigation might overwhelm any recovery the

3  Class stands to obtain.  *See id.*

4      A.      **The Role of the Court**

5      When a proposed class-wide settlement is reached, the settlement must be

6  submitted for court approval.  Fed. R. Civ. P. 23(e).  The approval of a proposed

7  settlement of a class action suit is a matter within the broad discretion of the trial

8  court. *Staton v. Boeing*, 327 F.3d 938, 959 (9th Cir. 2003).   Preliminary approval is

9  the first of three steps that comprise the approval procedure for settlements of class

10  actions. The second step is the dissemination of notice of the settlement to all class

11  members. The third step is a final settlement approval hearing, at which evidence

12  and argument concerning the fairness, adequacy, and reasonableness of the

13  settlement may be presented and class members may be heard regarding the

14  settlement. See *Manual for Complex Litig.* ("*Manual*"), *Second* § 30.44 (1993).

15      Preliminary approval is prerequisite to giving notice so that "the proposed

16  settlement ... may be submitted to members of the prospective Class for their

17  acceptance or rejection." *Philadelphia Hous. Auth. v. American Radiator &*

18  *Standard Sanitary Corp.*, 323 F.Supp. 364, 372 (D.C. Pa. 1970).   Preliminary

19  approval does not require the trial court to answer the ultimate question of whether

20  a proposed settlement is "fair, reasonable and adequate." *In re Jiffy Lube Sec. Litig.*,

21  927 F.2d 155, 158 (4th Cir. 1991); *Manual, Third*, § 20.212.  Instead, the question

22  presented on a motion for preliminary approval of a proposed class action

23  settlement is whether the proposed settlement is "within the range of possible

24  approval." *Manual, Second* § 30.44 at 229; *Gautreaux v. Pierce*, 690 F.2d 616, 621

25  n.3 (7th Cir. 1982).

26      While the decision to approve a proposed settlement is committed to the

27  Court's sound discretion, courts attach an initial presumption of fairness to a class

28  settlement reached in arm's-length negotiations between experienced and capable

MOT. FOR PRELIMINARY APPROVAL
09-CV-7193 MMM (JCx)

counsel after relevant discovery.  *See Linney v. Cellular Alaska P'ship*, C-96-3008, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998).  The opinion of experienced counsel supporting the settlement is entitled to considerable weight.  *See e.g.*, *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiff's counsel should be given a presumption of reasonableness); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 956-66 (9th Cir. 2009) ("parties [and] counsel. . . naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value"). In the same vein, a court considering a motion for preliminary approval neither decides the merits of the underlying case, nor crafts a settlement for the parties. *Officers for Justice,* 688 F.2d at 625; *Vasquez v. Coast Valley Roofing, Inc.,* 670 F. Supp.2d 1114, 1120 (E.D.Cal. 2009) ("the settlement hearing is not to be turned into a trial or rehearsal for trial on the merits").  This Court should give deference to the opinion of counsel who, in addition to engaging in extensive discovery to reach the terms of the Settlement Agreement, are experienced in class actions, and grant this motion.  Silverstein Decl. ¶¶ 6 - 11, 15 - 28.

### B.   Factors To Be Considered in Granting Preliminary Approval

A number of factors are to be considered in evaluating a settlement for purposes of preliminary approval. No one factor should be determinative, but rather all factors should be considered. These criteria have been summarized as follows:

> If the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

*Manual*, Second §30.44, at 229. Here, the settlement meets all of these criteria.

### 1.   The Settlement is the Product of Serious Informed and Noncollusive Negotiations.

MOT. FOR PRELIMINARY APPROVAL
09-CV-7193 MMM (JCx)

1    This settlement is the result of extensive and hard fought negotiations.
2  Wendy's denies each and every one of the claims and contentions alleged in this
3  Action. Wendy's asserted and continues to assert many defenses thereto, and has
4  expressly denied and continues to deny any wrongdoing or legal liability arising out
5  of the conduct alleged in the Action.

6    In the litigation and during settlement negotiations, Defendant raised real
7  arguments that highlghted the risks that Plaintiff faced at the certification stage.
8  For instance, Defendant argued that Wendy's written policies and procedures were
9  facially and legally compliant, and that while the instruction concerning the
10 requirements to "provide" breaks was lawful and consistent, the <u>manner</u> of
11 providing breaks at Wendy's was <u>not</u> standardized and not likely to be certified.

12   Defendant argued and pointed to facts demonstrating that each manager
13 determines how to communicate to employees authorization and permission to take
14 break periods.  As a result, authorizations and grants of permission take many
15 forms, vary from manager to manager, and also depend on which employee is being
16 authorized to take a break period.  Defendant also pointed to Court rulings in
17 support of its arguments that Plaintiff faced an uphill battle in obtaining class
18 certification and proving liability, noting that it appeared as though the Court was
19 going to interpret the "provide" standard in the manner urged by Defendant, and
20 which would render class certification difficult.  *See* 3/24/10 Order (Doc. 30) at
21 19:4-9 ("While plaintiff's timesheet and pay statement indicate that Lewis did not
22 take meal or rest breaks on certain dates and that Wendy's did not pay him
23 additional compensation as a result, he does not allege ***why*** he failed to take breaks
24 on the dates in question.  Without additional allegations elucidating the
25 circumstances that led Lewis to forego the breaks, the pleading fails to state a claim
26 on which relief can be granted, as Wendy's was not required to ensure that Lewis
27 took meal and rest breaks.") (emphasis added).  *Compare Kimoto v. McDonald's*
28 *Corp.,* No. CV 06-3032, 2008 WL 4690536, *6 (C.D. Cal. Aug. 19, 2008) ("The

1  Court cannot infer from the summary reports of various employees a company-wide

2  policy of not authorizing meal or rest periods.").[3]

3      Despite its denial of wrongdoing, Wendy's has concluded that this Action

4  should be settled in the manner and upon the terms and conditions set forth in the

5  Settlement Agreement in order to avoid the expense, inconvenience, and burden of

6  further legal proceedings, and the uncertainties of trial and appeals. Wendy's has

7  decided to put to rest the class claims released in the Settlement Agreement.

8      Prior to agreeing to proceed with mediation of the dispute, the Parties

9  conducted discovery, engaged in meet and confer sessions (and motions' practice)

10 regarding discovery and the state of the pleadings, and entered into discussions and

11 conference calls about about the nature and amount of data that would be provided

12 in advance of a full day mediation.  Prior to mediation, Defendant produced

13 thousands of documents, including electronic time punch data.

14     Settlement negotiations took place before one of the preeminent mediators

15 of wage and hour matters in California, David Rotman.  After a full day of

16 mediation, and reviewing the facts in this case, Mr. Rotman recommended a

17 settlement amount to the Parties as a mediator's proposal. Counsel for the Parties

18 both agreed to accept the mediator's proposal, based upon Mr. Rotman's expertise

19 as a wage and hour mediator, and the uncertainties of protracted litigation.

20 Silverstein Decl. ¶10.

21     By reason of the settlement, Wendy's has agreed to pay to the Settlement

22 Class Members a common fund, non-reversionary $1.5 million settlement, as

23 payment in full of all of Plaintiff's claims arising from the events described in the

24 Complaint including Class Counsel's attorneys' fees costs and expenses, the Class

25

26  _____

27  [3]  The Court also appeared to approve the legality of Wendy's Waiver of Meal
    Period form, which was central to Plaintiff's claim.  3/24/10 Order (Doc. 30) at
    13:15-15:12  (stating the waiver form "complies with the California Labor Code
28  which states that an employee's 'meal period may be waived by mutual consent of
    both the employer and employee'"(quoting Cal. Labor Code § 512(a)).

1    Representative's Enhancement, payment of the PAGA award, and the cost of class

2    notice and claims administration.

3         The Class Period begins on August 31, 2005 and continues through the date

4    of preliminary approval of the settlement.  Class Counsel has conducted a thorough

5    investigation into the facts of the class action, including an extensive review of

6    relevant documents and data, and has diligently pursued an investigation of the

7    Settlement Class Members' claims against Wendy's.  Based on the foregoing

8    documents and data, and their own independent investigation and evaluation, Class

9    Counsel is of the opinion that the settlement with Wendy's for the consideration

10   and on the terms set forth in Settlement Agreement is fair, reasonable, and

11   adequate, and is in the best interest of the class in light of all known facts and

12   circumstances, including the risk of significant delay, defenses asserted by

13   Wendy's, and numerous potential appellate issues. Wendy's and Wendy's counsel

14   also agree that the Settlement is fair and in the best interest of the Class Members.

15        Plaintiff and Class Counsel recognize that continuing to litigate and try this

16   Action against Wendy's through possible appeals could take several years at

17   considerable cost. Class Counsel also have taken into account the uncertain

18   outcome and risk of litigation, especially in complex actions such as this Action.

19   Class Counsel are also mindful of and recognize the inherent problems of proof

20   under, and alleged defenses to, the claims asserted in the Action.   Here the

21   litigation has been hard-fought with aggressive and capable advocacy on both sides.

22   Accordingly, "[t]here is likewise every reason to conclude that settlement

23   negotiations were vigorously conducted at arms' length and without any suggestion

24   of undue influence." *In re Wash. Public Power Supply Sys. Sec. Litig.*, 720 F. Supp.

25   1379, 1392 (D. Ariz. 1989).   Based upon their evaluation, Plaintiff and Class

26   Counsel have determined that the settlement set forth in the Settlement Agreement

27   is an excellent result and in the best interest of the Class Members.  Silverstein

28   Decl. at ¶14.

1          **2.**     The Settlement Has no "Obvious Deficiencies" and Falls Within
2                     the Range of Approval.

3          The proposed settlement herein has no "obvious deficiencies" and is well

4    within the range of possible approval. To evaluate the "range of possible approval"

5    criterion, which focuses on substantive fairness and adequacy, district courts

6    primarily balance plaintiffs' expected recovery against the value of the proposed

7    settlement. *In re Tableware Antitrust Litig.*, 484 F. Supp.2d 1078, 1080 (N.D. Cal

8    2007) ("Based on this risk and the anticipated expense and complexity of further

9    litigation, the court cannot say that the proposed settlement is obviously deficient or

10   is not "within the range of possible approval."); *Vasquez*, 670 F. Supp. 2d at 1120.

11   Here, the settlement confers a substantial benefit on Settlement Class Members,

12   while proceeding with litigation imposes considerable risks. See *Vasquez*, 670 F.

13   Supp. 2d at 1114.

14         During the mediation process, Wendy's presented a number of defenses that

15   presented serious threats to the claims of Plaintiff and the other Class Members.

16   Silverstein Decl. ¶10. First, Wendy's contended that its handbooks and policies

17   clearly and properly outlined its responsibilities under California law and precluded

18   a finding of classwide liability on the basis of an unlawful policy.  For example,

19   Wendy's argued that:

20   ●      Each California restaurant manager, assistant manager and shift supervisor

21          was required to sign Wendy's California Labor Law Summary.  The

22          California Labor Law Summary correlates shift lengths to break entitlements,

23          and instructs managers / supervisors that "[a]ll hourly/non-exempt employees

24          <u>must</u> be provided breaks according to the following schedule" (and then

25          provides a break schedule even more generous than that required by

26          California law).

27   ●      Managers and shift supervisors also received formal instruction from an HR

28          Representative concerning the obligation to provide meal and rest breaks.

MOT. FOR PRELIMINARY APPROVAL
09-CV-7193 MMM (JCx)

For example, a program received by Plaintiff Lewis instructed that: "Each hourly employee who works five hours or more in one shift is entitled to a full, uninterrupted half hour break."  It provided that:  "A break must be continuous, uninterrupted and at least 30 minutes in order to be unpaid.  Breaks less than 30 minutes are counted as working time and the employee must be paid for the break.  Breaks cannot be split."

- Each restaurant posted in its break room the California Industrial Welfare Commission's Wage Order ("Wage Order"), which advised employees of their entitlements to meal and rest breaks.  The employee handbook further advised Wendy's employees that: "All federal and state labor posters must be posted in every restaurant.  If you ever feel that you have not been treated fairly, speak to your supervisor or use the Wendy's 'Speak Out' program.  It's designed to solve problems and answer questions."  *Compare Perez v. Safety-Kleen Sys., Inc.,* 253 F.R.D. 508, 515 (N.D. Cal. 2008) (granting summary judgment in favor of employer; "Plaintiffs cite no authority, however, for the proposition that an employer is required to schedule meal breaks for its employees or to inform employees of meal break rights other than to post Wage Order posters.").

In addition, Wendy's also pointed to considerable evidence and authority[4] to support its arguments against class certification. Silverstein Decl. ¶ 10.  For example, Wendy's argued that, though its instruction concerning the requirements to "provide" breaks was consistent, the _manner_ of providing breaks at Wendy's was

---

[4] *Brown v. Federal Express Corp.*, No. CV 07-5011, 2008 WL 906517, *7 (C.D. Cal. Feb. 26, 2008) (determination whether the defendant made meal periods available requires "substantial individualized fact findings"); *Blackwell v. Sky West Airlines, Inc.,* 245 F.R.D. 453, 468 (S.D. Cal. 2007) (rejecting plaintiff's argument "that meal period allegations can be verified simply by reviewing Defendant's time records from those stations that used a time clock during the class period"; holding that individual questions predominate in claim that employer failed to provide 30-minute meal periods); *Lanzarone v. Guardmark Holdings, Inc.*, 2006 WL 4393465, *1, *6 (C.D. Cal. Sept. 7, 2006) (meal and rest period claims inherently present individualized questions).

1   not standardized.  It was ad hoc and varied from store to store and manager to
2   manager.  Each manager determined how to communicate to employees
3   authorization and permission to take break periods.  As a result, Wendy's argued,
4   authorizations and grants of permission take many forms, vary from manager to
5   manager, and also depend on which employee is being authorized to take a break
6   period.  Specifically, Wendy's argued that:

7   ●       Employees often took breaks but failed to punch out.  Indeed, as many courts
8           have noted, all incentives run against punching in and out for breaks even if
9           taken.  If a meal period was not punched the employee was paid for the time
10          (no small consideration for employees with few hours and making close to
11          the minimum wage).  And rest breaks were paid in any event.  As such,
12          punching out for them was widely considered to be a "hassle" for which the
13          employee receives no benefit.  *Compare Kimoto,* 2008 WL 4690536, at *6-7
14          ("The Court cannot infer from the summary reports of various employees a
15          company-wide policy of not authorizing meal or rest periods. First, there is
16          no financial incentive for an employee to clock in and out for a ten-minute
17          rest period, since that employee will get paid regardless.").

18  ●       Employees often elected to skip a lunch or rest break for any number of
19          reasons (including to get paid for a lunch break).

20  ●       Employees sometimes forget to take a break.

21  ●       The timekeeping system sometimes failed to record a break that was entered
22          because, for example, the break took place after Midnight and the system will
23          not record it because it is considered a new day and shift.

24          Wendy's argued that these considerations presented fact-intensive, highly
25  variant, and individualized scenarios, each of which would have to be resolved
26  separately before there could be any assessment of any violation of law.

27          Wendy's further argued that – even if the absence of a time punch could be
28  said to "prove" a "violation" of law – the time punch detail established no company

practice at any level.  Wendy's highlighted *Kenny v. Supercuts, Inc.,* 252 F.R.D. 641, 646 (N.D. Cal. 2008), where plaintiff argued that the time records of 68 declarants – which records showed that the declarants did not clock out for a full 30-minutes approximately 40% of the time – "create[d] an inference of a company-wide practice that interfered with the employees' right to a meal break."  *Id*.  In rejecting that theory, the court stated:

> The time records actually demonstrate the individual nature of the inquiry.  Some of these employees clocked out for their full 30-minute meal break nearly all the time, some none of the time, and some part of the time.  This disparity suggests that "the availability" of meal breaks varied employee to employee, or at least store to store or manager to manager.  Even plaintiff herself admits that she took her full 30-minute meal break 60 percent of the time.

*Id*.; *see also Kimoto*, 2008 WL 4690536 at *6 (such "time records actually demonstrate the individual nature of the inquiry," and why class treatment is not permissible).

Wendy's then argued that its electronic timekeeping records reflected even more variability than the timekeeping records that were deemed too variable to support class certification in *Kenny*.  Wendy's analysis of time punch data from its California restaurants showed that the actual recording rates of breaks varied widely from store to store, manager to manager, and even as to individual employees working the same days and shifts under the same manager.  Specifically, Wendy's argued that:

Across restaurants (with each store averaged):

- The instances of crew shifts over 6 hours for which the time entries record no meal break varied from less than 1% on average within some stores to over 30% in other, and that for crew shifts over 5 hours, just 16.7% of time punches (averaged across all restaurants) do not record the eligible meal period.  The percentage drops significantly if one excludes shifts of 6 hours or less.  On average across restaurants just 9.6% of time punches for shifts over 6 hours did not record the eligible meal period.  90.4% did record them.

- The instances of crew shifts in excess of 3.5 hours for which the time entries did not record eligible rest break(s) varied from 9.8% or less in some stores to more than 30% on average in others. Again, Wendy's argued, these deviations are huge, and show no pattern or practice to permit class certification. Averaged, 72.1% of the time punches for rest eligible shifts showed the eligible rest periods as recorded.

- The instances of shift supervisor shifts over 6 hours for which the time punches record no meal break varied from less than 4% on average within some stores to over 40% in others. Again, Wendy's argued, these deviations (even in averages) are huge, and evidenced no pattern or practice to permit class certification.

- The instances of shift supervisor shifts of in excess of 3.5 hours for which the time punches did not record the eligible rest break(s) varied from less than 30% on average within some stores, to more than 40% in others.

In same restaurant (with each person averaged):

- Wendy's argued that even store averages (used above) did not reveal the deviation within each store by individual. To illustrate just one store (Lewis' store), the number of unrecorded eligible meal breaks varied within that store by individual from 1.5% to 62%.

In the same restaurant, in the *same shift* on the *same day*:

- Wendy's argued that even if one compared workers in the same restaurant, working the same shift and on the same day, there was enormous variation concerning who did and did not record that he/she took eligible meal breaks. Comparing one individual versus all others who worked the same shift as him on the same day in the same restaurant, and isolating days when this employee did not record a meal, showed that anywhere from 33% to 100% of his co-workers that day and shift <u>did</u> record meals. Wendy's argued that to

determine why one recorded the meal, but others did not, is highly fact-specific and individualized.

After vigorous negotiations, the mediator presented the Parties with a proposal of $1.5 million to resolve the Action. Recognizing the potential risks inherent in continued litigation, both sides agreed. As the federal court recently held in *Glass v. UBS Financial Services,* where the Parties faced uncertainties similar to those here:

> In light of the above-referenced uncertainty in the law, the risk, expense, complexity, and likely duration of further litigation likewise favors the settlement. Regardless of how this Court might have ruled on the merits of the legal issues, the losing party likely would have appealed, and the parties would have faced the expense and uncertainty of litigating an appeal. "The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). Here, the risk of further litigation is substantial.

2007 WL 221862, at *5 (N.D.Cal.2007).

The proposed settlement eliminates the need for a lengthy, uncertain, and expensive trial or series of trials, or worse. The settlement further eliminates the risk of a denial of certification, which would force members of the Class to proceed on a plaintiff-by-plaintiff basis.  By eliminating the risk of uncertain outcomes in litigation, the Settlement Agreement reflects economies of time, effort, and expense, by eliminating the need for individual litigation on what are, on average, relatively modest claims. The settlement provides prompt and substantial relief to all absent Class Members, without the attendant risk of additional and uncertain litigation. Moreover, judicial resources are conserved. This settlement thus affords the proposed Class with prompt, efficient relief, while avoiding the expenses and burdens of trial.  All of these factors weigh heavily in favor of approving the settlement.

**3.**     The Settlement Does Not Improperly Grant Preferential Treatment To The Class Representative Or Segments Of The Class.

MOT. FOR PRELIMINARY APPROVAL
09-CV-7193 MMM (JCx)

The settlement agreement does not improperly grant preferential treatment to the class representative or segments of the Class.  Members will be eligible to receive amounts based on their position and the amount of workweeks during which, Plaintiff argues, Class Members did not receive adequate compensation. Class Members who terminated their employment after April 16, 2007 will receive an additional lump sum to compensate for what Plaintiff argues is Wendy's failure to pay all wages due at termination.

Furthermore, Plaintiff submits that the enhancement fee of $7,500.00 for the Named Plaintiff is reasonable.  Enhancement fees are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463.  An enhancement fee in the amount of $10,000.00 has been found to be a reasonable enhancement fee.  *Wells v. Allstate Ins. Co*. 557 F. Supp. 2d 1, 8-10 (D.D.C. 2008).

Plaintiff contends that the incentive payment sought is reasonable because Mr. Lewis was integral to the investigation and litigation of this claim, and the fee is intended to compensate him for the risks of undertaking this litigation, including the potential liability for costs of suit.  Mr. Lewis took his duties as a class representative seriously and regularly contacted class counsel to obtain status updates or check that the matter was proceeding as anticipated.  Mr. Lewis conferred with our office approximately weekly to provide information about witnesses, develop questions for interviews, and respond to arguments presented by Defendant. Mr. Lewis made himself available to come to counsel's office to assist with the drafting of targeted discovery, assist Counsel in finding and interviewing other class members and to review and analyze thousands of pages of documents provided by Defendant. (Lewis Decl. ¶¶ 2-7).  Mr. Lewis also made himself available during the mediation and was instrumental in bringing the mediation to a successful conclusion.  Plaintiff submits that for his stalwart dedication to this case

1   and the benefit to the public which this settlement has conferred, the Class

2   Representative enhancement fee should be rewarded. (Silverstein Decl. ¶¶ 41 - 44).

3       The settlement further allows for the allocation of up to 33 1/3%, or

4   $500,000 of the settlement to be awarded as attorneys' fees.  This request for

5   attorneys' fees is well within the range of possible approval for a class action

6   settlement where counsel has secured a common fund for the Class. (Silverstein

7   Decl. ¶¶ 36 - 40).  In accordance with the recent holding in *In re Mercury*

8   *Interactive Corp. Sec. Litig.*, 2010 WL 3239460 (C.A.9 (Cal.)), Plaintiff will file an

9   application for attorney's fees no less than fourteen (14) days prior to the deadline

10  for putative class members to object to the settlement, and schedule the application

11  to be heard on the same date and time as the Final Approval Hearing.

12  **VI.   THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT
13      PURPOSES**

14      For cases where no class has yet been certified, the Court must certify the

15  Class prior to approving the settlement. *See Vasquez*, 670 F. Supp. 2d at 1120.

16      **A.    The Proposed Class Should Be Certified Under Rule 23(a) and (b).**

17      To effectuate the settlement for settlement purposes only, Wendy's has

18  agreed to jointly request certification of the Settlement Class pursuant to the Parties'

19  Settlement Agreement, with the proposed Class is defined as: "All non-exempt

20  hourly employees (specifically, Crew Members, Shift Supervisors, Shift

21  Supervisors-Part Time, Shift Supervisors-in-Training, Assistant Managers,

22  Assistant Managers-in-Training, Co-Managers, and General Managers-in-Training)

23  who, at any time between August 31, 2005 and the Preliminary Approval Date,

24  were employed by Wendy's in a corporate-owned store located in California."

25      In light of the Parties' agreement, the Court's threshold task is to determine

26  whether the proposed settlement class satisfies the requirements to Rule 23(a) and

27  Rule 23(b)(3). Fed. R. Civ. P. 23. Here, the Court can find that the Class easily

28  meets the numerosity, commonality, typicality and adequacy of representation

1    requirements of Rule 23(a). In addition, the Class satisfies the Rule 23(b)(3)

2    requirements of predominance of common issues and superiority of the class action

3    device. Furthermore, because the proposed Settlement eliminates the need for trial,

4    no barrier to certification exists.  The settlement meets all of these criteria.

5               **1.**    Members Of The Class Are So Numerous That Joinder Of All

6                       Members Is Impracticable.

7        Rule 23(a)(1) requires that the proposed class be so numerous that joinder of

8    all class members is impracticable in light of the particular circumstances of the

9    class. Plaintiff need not, however, show that the number is so large that it would be

10   impossible to join every class member. *Harris v. Palm Spring Estates, Inc*. 329,

11   F.2d 909, 913-14 (9th Cir. 1964); *Murray v. Local 2620, Dist. Council 57,*

12   *AFSCME, AFL-CIO*, 192 F.R.D. 629, 631 (N.D. Cal. 2000). Instead, an attempt to

13   join all parties must only be difficult or inconvenient. *Harris*, 329 F.2d. at 913-4.

14       Here, the Plaintiff Class is comprised of approximately 8,891 employees.

15   Silverstein Decl. ¶30.   As such, the Class represents a distinct group of plaintiffs

16   whose members can be identified with particularity from Wendy's records, so as to

17   make it administratively feasible to determine individual class membership. *See*

18   *Campbell v. Price Waterhouse Coopers, LLP*, 253 F.R.D. 586, 593 (E.D. Cal.

19   2008). These class members are not only identifiable, they have been identified

20   already.  Judicial economy is clearly served if the members of the Class can settle

21   their claims together in this action rather than individually in separate actions. It is

22   unlikely that the majority of the members of the Class have the financial resources

23   necessary to pursue individual claims. Based on the foregoing circumstances, the

24   Class satisfies Rule 23(a)(1)'s numerosity requirement. *See, e.g.*, *Gaspar v.*

25   *Linvatec Corp*., 167 F.R.D. 51, 56 (N.D. Ill. 1996) (finding that plaintiff's proposed

26   class of 18 satisfied the numerosity requirement); *Grant v. Sullivan*, 131 F.R.D.

27   436, 446 (M.D. Pa. 1990) (holding that courts can certify a class made up of as few

28   as 14 members).

MOT. FOR PRELIMINARY APPROVAL
09-CV-7193 MMM (JCx)

**2.**    Common Issues of Law and Fact Unite the Class.

The threshold for finding commonality under Rule 23(a)(2) is not high. It requires only that there exist "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) requires that there be questions of law or fact common to the class. The commonality preconditions of Rule 23(a)(2) are "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "'All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts couples with disparate legal remedies within the class.'" *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (quoting, *Hanlon*, 150 F.3d at 1019). Members of the class may possess different avenues of redress, but their claims must stem from the same source. *See*, *Hanlon*, 150 F.3d at 1019; *see also Parra v. Bashas, Inc.,* 536 F.3d 975, 979 (9th Cir. 2008) (reversing trial court for failing to find commonality; commonality was established where a class of Hispanic employees sued for past pay discrimination. Even though their individual factual situations differed, all employees sought a common legal remedy for a common wrong).

Not every issue in the case must be common to all class members. But to justify class action treatment, there must be issues "common to the class as a whole"; and relief must "turn on questions of law applicable in the same manner to each member of the class." *Gen. Tel. Co. of Sw. v. Falcon,* 457 US 147, 155, 102 S.Ct. 2364, 2369 (1982).   Rule 23(a)(2)'s "common question" requirement creates only a "low hurdle" to class certification. *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1356 (11th Cir. 2009).

This case presents numerous common questions of law and fact that satisfy the requirements of Rule 23(a)(2), including but not limited to:

- Whether Defendant violated Wage Order No. 5-2001 and Sections 226.7 and 512 by failing to pay wages to class members for failing to provide meal breaks and rest breaks; whether Defendant failed to provide the

MOT. FOR PRELIMINARY APPROVAL
09-CV-7193 MMM (JCx)

1
2
3

required meal or rest breaks; whether employees worked more than five (5) hours without a meal break; whether employees who signed Defendant's meal period waivers were provided  rest breaks and/or worked more than six (6) hours without a meal break;

4

• Whether Defendant violated Sections 226, 226.3 and Wage Order 5-2001 by failing to provide accurate itemized wage statements and by failing to maintain accurate wage and hour records.

5
6

• Whether Defendant violated Sections 201-203 by failing to pay all wages due to former employees upon separation of employment.

7
8
9

These common questions are sufficient to satisfy Rule 23(a)(2). See, *Bibo v. Fed. Express, Inc.*, 2009 WL 1068880 at *7-8 (N.D. Cal. 2009); *Wang v. Chinese Daily News,* 231 F.R.D. 602, 607-608 (D.D.C. 2008).

10

    3.    <u>The Claims of the Plaintiff Are Typical of the Class Claims.</u>

11
12
13
14

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The Supreme Court has noted that "commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157, n.13.

15
16
17
18
19
20
21
22
23
24
25
26
27

Representative claims are "typical" if they are "*reasonably coextensive* with those of absent class members; they need not be substantially identical." *Dukes v. Wal-Mart, Inc.,* 509 F.3d 1168, 1184 (9th Cir. 2007)  (emphasis added; internal quotes omitted); *Hanlon*, 150 F.3d at 1020 ("Under the rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."); *Williams*, 568 F.3d at 1357 (holding typicality satisfied where "claims or defenses of the class and the class representative arise from the *same event or pattern or practice* and are based on the same legal theory") (emphasis added).  It is sufficient if the class representatives and the class "share a 'common issue of law or fact,'" *California Rural Legal Assistance v. Legal Serv. Corp*., 917 F.2d 1171, 1175 (9th Cir. 1990) (quoting *Blackie v. Barrack*,  524 F.2d 891, 904 (9th Cir. 1975).

28

MOT. FOR PRELIMINARY APPROVAL
09-CV-7193 MMM (JCx)

1    The claims of the named Plaintiff are typical of the claims of the Class.  The

2    named Plaintiff was employed by Defendant as hourly non-exempt employee in the

3    State of California between August 31, 2005 and the time of preliminary approval

4    settlement, the class period.  Accordingly, the named Plaintiff is a Class Member.

5    Like Class Members, Plaintiff sustained injuries and damages arising out of and

6    caused by Defendant's common course of conduct in violation of laws and

7    regulations that have the force and effect of law and statutes.  A review of the

8    documentation produced by Defendant, both formally and informally, reflected that

9    the manner in which Defendant failed to provide meal and rest breaks and pay

10   wages, and failure to provide accurate itemized statements, resulted in similar

11   violations among the members of the Settlement Class.

12          **4.**    The Named Plaintiff Has Fairly And Adequately Protected The

13                Interests Of The Class.

14   Rule 23(a)( 4) permits class certification so long as "the representative parties

15   will fairly and adequately protect the interests of the class." The representation is

16   "adequate" if: the attorney representing the class is *qualified* and *competent*, the

17   class representatives are not disqualified by interests antagonistic to the remainder

18   of the class and the named plaintiff must "prosecute the action vigorously" on

19   behalf of the class. *In re Mego Fin'l Corp. Sec. Litig.,* 213 F.3d at 462; *Hanlon*, 150

20   F.3d at 1020; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.

21   1978).

22          Simply put, Rule 23 asks whether the representative plaintiff will vigorously

23   prosecute on behalf of the class and has a basic understanding of the claims. This

24   requirement has been met here.  First, Plaintiff is well aware of his duties as a

25   representative of the class and has actively participated in the prosecution of this

26   case to date.   Plaintiff participated extensively in discovery and investigation of the

27   Action.  Second, Plaintiff has retained competent counsel who has extensive

28   experience in wage and hour class actions.  Silverstein Decl. ¶¶ 15 – 28.   Class

MOT. FOR PRELIMINARY APPROVAL
09-CV-7193 MMM (JCx)

counsel meets the benchmark standards set forth in Rule 23(g*). Oxendine v. William*s, 509 F.2d 1405, 1407 (4th Cir. 1975).  Class Counsel is currently litigating more than a dozen wage and hour class actions, and has litigated many dozens more. Third, there is no antagonism between the interests of the named Plaintiff and those of the Class.  Both Plaintiff and the Members of the Class seek monetary relief under the same set of facts and legal theories. Under such circumstances, there can be no conflicts of interest, and adequacy of representation is presumed.  *In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 268 (D. Minn. 1989).

### 5. Rule 23(b)(3) prerequisites are satisfied.

A class action for damages may be certified where: (1) the questions of law or fact common to the class "predominate" over questions affecting the individual members and (2) on balance, a class action is superior to other methods available for adjudicating the controversy. FRCP 23(b)(3).  Common issues predominate, warranting that the matter be resolved through a class action. *Hanlon*, 150 F.3d at 1022 ("[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis").  Plaintiff Elliott Lewis and all putative Class members seek compensation for Defendant's failure to pay Labor Code section 226.7(b) premium wages for missed meal and rest breaks.  The Class Members' potential legal remedies are identical.  Any variations in the damages, such as those arising from different wages or schedules, are insufficient to defeat class certification. *Blackie*, 524 F.2d at 905-906; *Whiteway v. FedEx Kinko's Office and Print Serv., Inc.*, No. 05-2320, 2006 WL 2642528, at *4, 10 (N.D. Cal. Sept. 14, 2006).  Nevertheless, these variations are accounted for in the settlement agreement in effort to achieve equity.

To certify a class, the Court must also determine "that a class action is superior to other available methods for the fair and efficient adjudication of the

1   controversy." Fed. R. Civ. P. 23(b)(3).  "Where classwide litigation of common

2   issues will reduce litigation costs and promote greater efficiency, a class action may

3   be superior to other methods of litigation." *Valentino v. Cater-Wallace, Inc*., 97

4   F.3d 1227, 1234 (9th Cir. 1996); *In re Wells Fargo Home Mortgage Overtime Pay*

5   *Litig.*, 571 F.3d 953, 958 (9th Cir. 2009).

6       Superiority is satisfied in the present case because: (1) members of the

7   proposed Class have little or no interest in individually controlling the prosecution

8   of separate actions, and (2) prosecuting or defending separate actions at this stage

9   would be impractical and inefficient.  Furthermore, because the action is being

10  settled, rather than litigated, the Court need not consider manageability issues that

11  might be presented by the trial involving the issues in this case.

12      In short, resolution of the litigation by the Parties' Settlement Agreement is

13  superior because it completely avoids duplicative litigation of common issues and

14  prevents the problem of contradictory outcomes. As such, this action allows all of

15  the Class Members' claims to be fairly, adequately, and efficiently resolved to a

16  degree that no other mechanism would provide. *See Vasquez*, 670 F. Supp. 2d at

17  1123 (finding that a class action for settlement purposes was superior to other

18  available methods for the fair adjudication of plaintiffs' wage and hour claims);

19  *Rosenburg v. I.B.M.,*, 2007 WL 128232, at *4 (N.D. Cal.) (finding that class action

20  device was superior to all other available methods for fairly and efficiently settling

21  plaintiffs' misclassification claims).

22  **VII.   CONCLUSION**

23      Based on the foregoing, Plaintiff respectfully requests that the Court

24  preliminarily approve the Settlement Agreement, conditionally certify the

25  Settlement Class, authorize mailing of Notice to the Class, schedule a hearing date

26  for Final Approval of Class Settlement, and enter the Proposed Order lodged

27  concurrently herewith (and also attached to the Settlement Agreement signed by the

28

MOT. FOR PRELIMINARY APPROVAL
09-CV-7193 MMM (JCx)

1   parties).  Defendant Wendy's International, Inc. joins in this request for preliminary

2   approval by separate concurrence filed herewith.

3   DATED: October 15, 2010                    KESLUK & SILVERSTEIN

4

5   By_____/s/_____

6                                              Douglas N. Silverstein, Esq.
                                               Michael G. Jacob, Esq.
7                                              Attorneys for Plaintiff
                                               ELLIOTT LEWIS, an individual, on
8                                              behalf of himself, and all others
                                               similarly situated
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOT. FOR PRELIMINARY APPROVAL
09-CV-7193 MMM (JCx)